FILED
United States Court of Appeals
Tenth Circuit

February 19, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

CINDY L. WENDELIN,

       Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

       Defendant-Appellee.

No. 09-1211
(D.C. No. 1:08-CV-00238-CMA)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before **GORSUCH** and **ANDERSON**, Circuit Judges**,** and **BRORBY**, Senior
Circuit Judge.

Cindy L. Wendelin appeals the district court's order upholding the

Commissioner's denial of her application for social security disability benefits.

We exercise jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g) and

affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Background*

Ms. Wendelin alleges disability since May 10, 2004, due to radial nerve damage to her right hand and arm sustained during a surgical procedure on that date. She also claimed to be afflicted with bilateral hip bursitis, phlebitis of her arms, edema, heel pain, plantar fasciitis, and to have side effects from medications. She was treated by Dr. Lesnak, who examined her periodically and prescribed medication for pain. She complained of pain, tingling, and numbness in her right hand and forearm. Dr. Lesnak's examinations consistently revealed a full range of motion in Ms. Wendelin's right wrist and right elbow with a strength of 5/5. There was no skin discoloration, change in skin temperature or color, or abnormal hair growth. Electrodiagnostic nerve testing in October 2004 showed evidence of a right radial sensory neuropathy. A quantitative autonomic evaluation report dated March 16, 2005, indicated a low probability for the presence of complex regional pain syndrome. Dr. Lesnak completed pain questionnaires on August 17, 2005, and March 12, 2007, indicating that Ms. Wendelin suffered from severe pain.

Dr. Morgan also treated Ms. Wendelin. He completed a pain questionnaire on February 5, 2007, indicating that Ms. Wendelin had pain and diagnosing regional pain syndrome. In addition, on May 17, 2007, Dr. Morgan wrote that Ms. Wendelin "is totally and permanently disabled." Admin. R. at 199.

Ms. Wendelin's application for benefits was denied initially. An administrative law judge ("ALJ") held a hearing at which Ms. Wendelin appeared with counsel and testified. A vocational expert ("VE") also testified. The ALJ determined that Ms. Wendelin could not perform her past relevant work, but she could perform other work that existed in substantial numbers in the regional and national economies. Accordingly, he denied benefits at step five of the five-part sequential evaluation process. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (explaining the five-step framework for determining disability).

The Appeals Council received additional medical evidence. "[A]ny new evidence submitted to the Appeals Council on review becomes part of the administrative record to be considered when evaluating the [Commissioner's] decision for substantial evidence." *Blea v. Barnhart*, 466 F.3d 903, 908 (10th Cir. 2006) (quotation omitted). The Appeals Council denied review. The district court affirmed the Commissioner's decision. Ms. Wendelin appeals.

*Legal Framework*

We review the Commissioner's decision to ascertain whether it is supported by substantial evidence in the record and to evaluate whether he applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted). To

determine whether substantial evidence supports the Commissioner's decision, we examine the record as a whole, but we do not reweigh the evidence. *Id.* We also do not "substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotation omitted).

In this context, "disability" requires both an "inability to engage in any substantial gainful activity" and "a physical or mental impairment, which provides reason for the inability." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (quotation omitted). The impairment must be a "'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .'" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (quoting 42 U.S.C. § 423(d)(1)(A)). It is undisputed that Ms. Wendelin was insured for disability through December 31, 2006. Consequently, it was her burden to establish her disability before that date. *See Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).

On appeal, Ms. Wendelin argues (1) the hypothetical questions the ALJ posed to the VE did not include her limitations and were contrary to the medical evidence, (2) the ALJ failed to develop the record, and (3) the ALJ erred in his credibility determination.

*Hypothetical Questions to VE*

Ms. Wendelin asserts that the ALJ erred in finding that she could perform the jobs identified by the VE because the hypothetical questions the ALJ posed to the VE did not accurately reflect her limitations. She contends that the ALJ's hypothetical questions did not include Dr. Lesnak's October 5, 2005, limitations that she refrain from repetitive-motion activities with her right upper extremity and that she lift no more than two to five pounds with her right hand. In addition, Ms. Wendelin asserts that the hypothetical questions did not include limitations based on her pain and inability to concentrate.

Ms. Wendelin faults the ALJ for not incorporating Dr. Lesnak's October 2005 limitations into the hypothetical questions. But she did not submit the October 2005 report until after the ALJ had issued his decision. The Appeals Council considered the report and determined that it did not warrant a different outcome. Ms. Wendelin points to no medical evidence other than Dr. Lesnak's October 2005 report, and our review has revealed none, describing limitations to her right upper extremity. Moreover, in his March 2007 report, Dr. Lesnak did not indicate any limitations. And the ALJ accounted for Ms. Wendelin's limited ability in her right hand by including in his hypothetical questions a limitation of only occasionally using her right upper dominant extremity for handling, fingering, reaching, and feeling. The VE identified five jobs that would accommodate that limitation.

Ms. Wendelin challenges the ALJ's determination that those five jobs existed in sufficient numbers to qualify as "significant." She relies on the numbers of those jobs available in her home state of Colorado. The VE testified that the following jobs would be within Ms. Wendelin's capacity, which the ALJ accepted and incorporated into his decision: (1) school bus monitor–336 jobs in Colorado and 11,941 nationally, (2) surveillance system monitor–364 jobs in Colorado and 12,947 nationally, (3) usher–161 jobs in Colorado and 11,525 nationally, (4) callout operator–177 jobs in Colorado and 11,133 nationally, and (5) counter clerk–1,059 in Colorado and 44,591 nationally. Admin. R. at 233-34.

Ms. Wendelin's sole reliance on the numbers of jobs in Colorado is misplaced because the VE also testified about the number of jobs available nationally.

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the *national* economy, *regardless of whether such work exists in the immediate area in which [she] lives* . . . .

42 U.S.C. § 423(d)(2)(A) (emphasis added). The statute's reference to work existing in the national economy "means work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." *Id.*; *accord Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005) ("The Commissioner met [his] step-five burden of proving that there are sufficient

jobs in the *national economy* for a hypothetical person with [the claimant's] impairments." (emphasis added)); *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) ("The Commissioner is not required to show that job opportunities exist within the local area."). Ms. Wendelin does not argue that the numbers of jobs nationally is not "significant." Accordingly, we decline to remand based on her challenge to the number of jobs available in Colorado.

Next, Ms. Wendelin argues that the hypothetical questions did not specify an inability to concentrate due to pain. But the ALJ did take into account a limitation on concentration by confirming with the VE that all of the jobs she identified had a specific vocational preparation ("SVP") of two, which is in the class of unskilled work, Social Security Ruling 00-4p, 2000 WL 1898704, at *3, and which is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time," 20 C.F.R. § 404.1568(a).[1] In addition, the ALJ credited her treating physicians' opinions that she had severe pain that interfered with her ability to concentrate, but also noted that her physicians had not imposed restrictions or stated that she could not engage in competitive work. *See* Admin. R. at 10H. Therefore, we conclude that the

---

[1] For the first time in her reply brief on appeal, Ms. Wendelin objects to the ALJ's methodology to accommodate her inability to concentrate. We decline to depart from our general rule not to consider issues first presented in a reply brief. *See Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1170 n.2 (10th Cir. 2008). In addition, Ms. Wendelin has waived this issue by filing to raise it before the district court. *See Wall*, 561 F.3d at 1066-67 (declining to address on appeal issue mentioned but not argued to the district court).

hypothetical questions posed to the VE "provided a proper basis for the ALJ's disability decision." *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

*Failure to Develop the Record*

Ms. Wendelin also claims the ALJ failed to discuss many of her medical problems. She asserts that these conditions "cause significant vocationally relevant limitations," Aplt. Opening Br. at 13, but she does not attempt to explain how they limit her functioning, nor does she point to any objective medical evidence to support this claim.

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ reviewed Ms. Wendelin's medical complaints and concluded that there were "no objective medical records showing these complaints impact[ed] [her] functioning in any way." Admin. R. at 10E-10F. Our review of the record also discovered no medical evidence indicating that Ms. Wendelin's other complaints limited her functioning. Accordingly, the ALJ's determination is supported by substantial evidence.

Although Ms. Wendelin makes a general claim that a remand is necessary because the ALJ failed to develop the record, she has identified no area of the evidence that required development. "[A]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing," but where, as here, the claimant was

represented by counsel, the ALJ may usually rely on counsel to adequately present the evidence, and "to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quotations omitted). Because an ALJ is not required "to exhaust every possible line of inquiry," *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997), and this issue was not raised to the ALJ, the ALJ was not required to address it. Consequently, a remand is not warranted. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (declining to remand where claimant's counsel "made no effort to point out the existence or relevance of [omitted medical evidence] to the ALJ").

### *Credibility*

Finally, we consider Ms. Wendelin's argument that the ALJ erred in finding her allegations of disabling pain not credible. It is well-established that "[c]redibility determinations are peculiarly the province of the finder of fact," but "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration and quotation omitted).

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Branum*, 385 F.3d at 1273 (quotation omitted). Before the subjective evidence is considered, a claimant "must first prove by objective medical evidence the existence of a pain-producing impairment that could

-9-

reasonably be expected to produce the alleged disabling pain." *Id.* (quotation omitted).

The ALJ's analysis covered the criteria an ALJ should consider in evaluating subjective complaints of pain: (1) whether the objective medical evidence established a pain-producing impairment; (2) if so, whether there was a loose nexus between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, claimant's pain is in fact disabling. *Kepler*, 68 F.3d at 390. The ALJ determined that the first two prongs were met. Accordingly, he then had to decide whether he believed Ms. Wendelin's assertion of disabling pain after considering various factors. *See Branum*, 385 F.3d at 1273-74. The ALJ acknowledged that Ms. Wendelin took Ultracet and Neurontin for her pain, and he considered her activities of daily living, the inconsistencies between her claim of disabling pain and the objective medical evidence, and the inconsistencies between her hearing testimony and her prior statement of her actual functioning. The ALJ found both her activities and the medical evidence to be inconsistent with her complaints of disabling pain. Consequently, the ALJ concluded that Ms. Wendelin had some pain, Admin. R. at 10I, but found not credible her claim that the pain was totally disabling, *id.* at 10G, 10J. "'[D]isability' requires more than the mere inability to work without pain." *Wall*, 561 F.3d at 1068 (quotation omitted). The ALJ

-10-

properly considered the relevant factors and the evidence in making his credibility determination.

Ms. Wendelin also avers that the ALJ's credibility finding was flawed because he did not discuss each of the factors set forth in Social Security Ruling 96-7p. "Under this ruling, a credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 WL 374186, at *4). Social security rulings are binding on the ALJ. 20 C.F.R. § 402.35(b). "Our precedent does not require a formalistic factor-by-factor recitation of the evidence so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (alteration and quotation omitted). As our discussion above demonstrates, the ALJ properly conducted a credibility analysis, and his credibility determination was closely and affirmatively linked to substantial evidence.

As part of her argument that the ALJ's credibility ruling was flawed, Ms. Wendelin asserts that the ALJ "ignored the medical findings . . . and concluded that [she] did not have the medical problems that even her treating physicians said she had." Aplt. Opening Br. at 14. This does not precisely

-11-

challenge the ALJ's credibility determination, and we construe it as alleging that the ALJ failed to give controlling weight to Ms. Wendelin's treating physicians' opinions.

"Under the 'treating physician rule,' the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not. The initial step in evaluating the opinion of a treating source is to determine whether the opinion merits 'controlling weight.'" *Hackett v. Barnhart*, 395 F.3d 1168, 1173-74 (10th Cir. 2005) (citations omitted). A treating-source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "consistent with other substantial evidence in the record." *Id.* at 1174 (quotations omitted). The ALJ must state his reasons for the weight he gives a treating source's opinion, and if he "rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Branum*, 385 F.3d at 1275 (quotation omitted).

The ALJ accepted the opinions of Dr. Lesnak and Dr. Morgan that Ms. Wendelin had some limitation and pain in her right upper extremity. He did not accept Dr. Morgan's diagnosis of regional pain syndrome because that diagnosis was eliminated by testing performed by Dr. Schakaraschwili. The ALJ was not bound by Dr. Morgan's unsupported statement that as of May 17, 2007, she was "totally and permanently disabled," Admin. R. at 199. This statement

-12-

was not supported by objective medical evidence. In addition, there is no indication that this opinion would "support a finding that she was continuously disabled for twelve months" preceding December 31, 2006, her last insured date. *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348 (10th Cir. 1990). Furthermore, the ultimate determination of disability is for the agency, not the physician. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (stating a treating physician may opine that a claimant is totally disabled, but "[t]hat opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]").

As for Dr. Lesnak, the ALJ erroneously concluded that this physician had not examined Ms. Wendelin since May 2005, because the October 2005 report had not been submitted to the ALJ. Even so, he noted that the EMG studies showed improvement in Ms. Wendelin's impairment that correlated with the improvements shown in the clinical findings. Dr. Lesnak's October 2005 report stated that although Ms. Wendelin continued to have pain in her right hand and arm, "her examination remained unchanged," except for "some give-way weakness secondary to pain at times." Admin. R. Ex. B following page 204, at 1. The Appeals Council determined that the October 2005 report did not justify a remand. Based on our review of the record, we conclude that the agency's treating-physician assessment comports with the required analysis.

-13-

*Conclusion*

We conclude that the Commissioner considered Ms. Wendelin's claims under the correct legal standards and supported his decision with substantial evidence. Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge